Totten Ji,
delivered the opinion of the court.
This is an action of forcible entry and detainer, instituted in the circuit court of Giles, by Suttle against White, to recover the possession of a farm and tract of land, containing 466| acres, known as the Biles place, and damages for such forcible entry and detainer. The action was commenced by writ or summons, issued by the clerk of said court, reciting the premises, the plaintiff’s right of possession, and the injury done thereto, by the forcible entry and detainer of the defendant, to the plaintiff’s damage, &c.
To this the defendant pleaded not guilty; and there was no declaration or other pleading in the case. The jury found the defendant guilty of the forcible entry and detainer aliedged in the writ, assessed the value of the rents, for the *170 time the premises were detained, at five hundred dollars, and the damages sustained by the plaintiff, by reason of said forcible entry and detainer, at two thousand five hundred dollars.
The defendant’s motion for a new trial being overruled, and judgment rendered on said verdict, he has appealed in error to this court.
We do not deem it material to detail the facts, except so far as it may be necessary to raise the question made in argument. It appears, however, that plaintiff, Suttle, resided at another farm, but had his hands and overseer on the farm in question, during the years 1848 and 1849, and down to about February, 1850, when they were forcibly and violently expelled by the act, agency and threats of said defendant, who thereon took possession, and has since continued in possession.
Before defendant took possession, he claimed title by deed, to the land in question; said there was a combination against him; that justice would not be done him; that he intended to take matters into his own hands, and that he would have possession of the place at the risk of his life. He went with an overseer and some of his slaves and took possession of part of the premises, and commenced building a house. He forced the plaintiff’s negroes out of their houses and took possession. He then sent for plaintiff’s overseer, who resided on another part of the farm; he went, saw five guns stacked in the house occupied by the defendant. White employed his hands in cutting rail timber, making rails, breaking down cotton stalks, and repairing the houses. On one occasion Suttle ordered defendant’s hands out of the field, — they went home, and there was loud talking at defendant’s — they came back, — the overseer sat on a stump, with a gun in his hand. White gave notice to Suttle’s overseer to leave in six days — Suttle came to protect his possession. At the end *171 of the time limited by the notice, the overseer’s house was fired upon in the night, and some three or four loads of buckshot were shot into it from different directions. The overseer, his family, and Suttle. were in the house. They were armed and made some attempt at resistance, and some of them returned an ineffectual fire; no person was injured. The next morning the overseer, his family and Suttle, abandoned the premises, and soon afterwards, Suttle removed his negroes. He left a considerable amount of cotton ungathered in the field, and corn, fodder, stock, and other effects on the premises, these he afterwards removed or sold, the defendant offering no obstacle to the plaintiff’s removing his property and effects. The defendant thereon took full possession.
It appears, that this is a valuable farm, and has some two hundred acres of open land for cultivation. The plaintiff, who worked about twenty hands, employed them at this farm and at the Cross-Water place, where he resided. He had not land enough at this latter place for his force, and the consequence was, that it was not well or profitably employed in 1850, by reason of the loss of the Biles place.
The witness, Simpson, proves, that the defendant cut and used a quantity of timber on the Biles place — that he caused a large “deadening” of the timber to be made.
Witness, George Suttle, proves, that Suttle’s houses, for his overseer and hands, were taken down and removed to another part of 1he farm, leaving Suttle’s slaves and their clothing without a shelter.
Witness, Abernathy, also speaks of the cutting down of the timber, the “deadening,” &c. To this proof no objection was made by defendant’s counsel, at the time it was admitted.
There was much other proof on the subject of damages, which it is not material to state, no question being made upon it. It was variously estimated. Two of defendant’s witnesses, Rainey and Wall, stating the damages at $2000, the *172 plaintiff's witnesses at from $3000 to $4500- One of the witnesses speaking of the damages, observed, that apart from any mental suffering, he would estimate the damages at $4500, and if he took the mental suffering into consideration, he would estimate it at more than the parties were both worth» The defendant’s counsel objected to the speaking of mental suffering, and the jury were directed not to regard any part of the testimony in relation to it. The defendant, by counsel, then moved the court to exclude all testimony as to damages, except as to the actual expense of removing. This the court refused to do, but permitted testimony to go to the jury, upon the subject of damages: First. As to defendant’s entering upon the land and detaining the same. Second. As to the manner in which it was done. Third. As to the actual inconvenience the plaintiff was put to, by the defendant’s taking possession of the land. Fourth. As to the actual expenses in removing from the land. The defendant offered to read a deed from Stephen Biles to the defendant for the 1 and in question, which being excepted to, was rejected by the court.
Several questions are made and insisted upon in argument. First. That the court erred in permitting evidence to go to the jury of waste done to the timber, houses, &c. Second. That the court erred in rejecting evidence of the defendant’s title to the land. Third. That the court erred in its instructions to the jury on the subject of damages.
The act of 1842, ch. 86, makes material changes in the action of forcible entry and detainer. It may now be originally instituted in the circuit court, the proceedings to conform, as near as may be, to the usual forms of the action, as stated in that act; or, the court may, if it think proper, direct a declaration to be filed, and pleadings made up, showing the issues that are to be submitted to a jury. We can see no reason why, in any case instituted in the circuit court, the }3leadings should be dispensed with. Certainly they arc of great utility *173 in stating the precise issues to be tried between the parties. But whether there shall be pleadings or not, is left by statute, to the discretion of the circuit judge, and we do not see that its exercise is subject to review in this court. Possibly, in some circumstances, where the justice of the case evidently required it, this court might remand such a case, with directions, that issues, involving the rights of the parties, should be made as in other cases. We do not, however, consider that we are authorised to do so, in the present case.
The statute further provides, “that where the jury shall find for the plaintiff, they shall ascertain in their verdict, the value of the rent, and the damages sustained by the plaintiff, by the forcible or unlawful detainer, and the court shall give judgment accordingly.”
Formerly the action was a remedy to recover the possession only. Now, in virtue of the act, it is a remedy, also, to recover damages for the wrongful disseisin. The damages contemplated by the act, have reference to injuries done, by reason of the forcible entry and detainer, or unlawful detainer. For any injury which is the immediate result or consequence of the forcible and unlawful disseisin, the plaintiff is entitled to recover damages, as incident to the recovery of the possession, in this form of action. Provided, it be not for injury merely to the freehold. For injury to the freehold he cannot recover in this form of action, because that would necessarily involve an issue upon the title to the land, and that would be inconsistent with the nature and object of the action, it having-reference only to the right of possession. This matter is very fully and well stated by Turley, J., in Goodwin vs. Saunders, 9 Yerg. R., 35, where he says: “The writ of forcible entry and detainer is given in order to preserve the peace and harmony of society, by preventing persons, who have conflicting titles to the same land, from taking redress of their wrongs into their own hands. It is, therefore, expressly provided, *174 that litle shall never be enquired into, in this mode of proceeding; the only question being, who was in possession, and how that possession was lost. If it were otherwise, serious would be the consequences to society; for when the title to land is to be disputed, the possession is a matter of great importance, and if it were left to be struggled for between the parties by force and violence, the peace of the community would not only be destroyed, but in very many instances, bloodshed would be the consequence.” The present case is a pointed illustration of the policy and reason of the rule. The act of 1821, ch. 14, sec. 20, expressly excludes any inquiry into the merits of the title, and this important provision, not being repealed by the act of 1842, we do not think it repealed by any inoperative, conflicting provision.
Assuming this to be the true construction of the statute, it follows, that any evidence of injury merely to the freehold, is incompetent, as of waste done in cutting down and destroying timber and the like.
But we have seen that the evidence of this description, so far as it goes, was admitted without objection. It is true, that in a subsequent part of the proceeding, the defendant’s counsel “moved the court to exclude all testimony, as to damages, except as to the actual expense of removing.” This the court very properly refused to do; for certainly there was much competent and material evidence, on the subject of damages, having no relation whatever, to any injury done to the freehold. This i of course, could not be excluded. The counsel did not ask the court to exclude evidence of waste done to the timber or houses, or of other injury to the freehold; and made no objection when such evidence, so far as it goes, was admitted. If the counsel had moved the court to exclude all illegal evidence admitted, without objection, in the course of the trial, the motion would have been more definite and certain than the one that was made, and yet too vague and un *175 certain to put the court in the wrong. To have this effect, the illegal evidence objected to, must be distinctly indicated and stated. As to the evidence of title, offered by defendant, in the view we have taken, it was of course properly rejected.
In the next place, as to the charge of the judge on the subject of damages, he instructed the jury as follows: “In ascertaining the amount of damages, you will not look at the mere mental anxiety of the plaintiff, but will first consider the violation of his right, and the manner in which it was done. Secondly, the (defendant’s) entering upon the land and detaining the same, the length of the detention, and the manner in which that has been done; for, whenever a man does an unlawful act, by which he inflicts an injury upon the person or right of another, the manner of doing such unlawful act, is a matter of legitimate consideration for a jury, on a question of damages. But in addition to these several grounds of damages, if you find for the plaintiff, you will take into consideration, also, any actual inconvenience he suffered, by his ne-groes being thrown out of profitable employment, for the want of land to cultivate, and any actual expense and trouble he may have sustained in breaking up his farm, and removing from it.” We see no error in these instructions. The objection chiefly relied upon is, that the jury were permitted to consider the injury sustained by the plaintiff, on account of his slaves being thrown out of employment, for want of land to cultivate. But this was the immediate and direct result of the trespass and disseisin complained of; and it is impossible not to see, that injury must necessarily result to the plaintiff from this circumstance. In Damron vs. Roach, 4 Humph. R. 135, the court say: “The rule now adopted is, that (in trespass) the plaintiff may prove special damages, if they are strictly the consequence of the trespass committed, or if the act done by the defendant, causing such special damage, constitutes a part of one entire transaction, of which the principal trespass *176 was the commencement, and 2 Phil. Ev., 188, ch. 14, sec. 10; is referred to. That case was trespass, for throwing down the plaintiff’s fence, and the special damage was, that his cattle had escaped and been lost, and he recovered their value. So in 2 Greenl. Ev. sec. 268, it said, that in the proof of damages, both parties must be confined to the principal transaction complained of, and to its attendant circumstances and natural results, for these alone are put in issue. These results include all the damage to the plaintiff, of which the injurious act of the defendant was the efficient cause, though, in point of time, such damage did not occur until some time after the act done.
Thus in trespass, quare clausum fregit, where the defendant had broken and dug away the bank of the river, in the plaintiff’s close, the jury were properly directed to assess the damages, occurring three weeks afterwards, by a flood, which rushed in at the breach and carried away the soil. Dickinson vs. Boyle, 17 Peck, 72.
Now the injury here is, that the plaintiff’s slaves were throwm out of employment, by the wrongful act of the defendant; and this injury was greater or less, according to the circumstances of the case. If they could be otherwise as profitably employed, as on the farm from which they had been expelled, the injury would thereby be diminished; but if not, the injury would of course be greater.
The judge did not undertake to say what damages the jury should give, by reason of the injury in question. He merely states, that it was proper to consider the injury sustained by the plaintiff, by reason of his slaves being thrown out of employment, for want of land to cultivate. The injury consisted in this, that the plaintiff’s slaves were thrown out of employment by the trespass and disseisin committed by defendant. For that injury he was entitled to damages; and the amount should depend upon the facts and circumstances of *177 the case, but those must have immediate connexion with the principal injury complained of.
There being no error in the record, the judgment well be affirmed.